UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| CHARLES SUBLETT and ) | |
| JUNNIE SUBLETT, ) | |
| ) | |
| Plaintiffs, ) | Cause No. 4:12-cv-52-SEB-TAB |
| ) | |
| v. ) | |
| ) | |
| PAUL LARUE, ) | |
| a.k.a.  JUST ME MUSIC ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING MOTION TO DISMISS**

Defendant seeks dismissal of the Verified Complaint on the grounds that Plaintiffs' pleading consists of nothing more than "conclusory allegations or legal conclusions masquerading as factual allegations …."  The admittedly sparse Complaint filed by Plaintiffs nonetheless consists of nine separate causes of action:  **Counts 1 and 2** seek injunctive relief;  **Count 3** alleges a breach of contract;  **Count 4** asserts a "bad faith breach of contract;"  **Count 5** is a breach of fiduciary duty claim;  **Count 6**, the tortious interference with business relationships;  **Count 7** seeks to recover for defendant's alleged tortious interference with contract;  **Count 8** is a claim for promissory estoppel; and **Count 9** accuses defendant of having committed  fraud in inducement.

The following facts are drawn from the Complaint itself:  Plaintiffs Charles Sublett and Junnie Sublett (the "Subletts" or "Mr. and Mrs. Sublett") were and perhaps

still are the husband and wife owners and operators of what they describe simply as a "business" which they operated under the "assumed" name of "Mediak."[1] They are residents of Floyd County, Indiana. They have sued Defendant "Paul LaRue a.k.a. Just Me Music," and" ("Mr. LaRue" or "LaRue"), a resident of Tennessee, following the collapse of the business they conducted jointly with Mr. LaRue. The disputes that have arisen between them, according to Plaintiffs, involve an amount in controversy that exceeds $75,000. Thus, Plaintiffs appear to have properly invoked the Court's diversity jurisdiction, pursuant to 28 U.S.C § 1332.

Our review of the facts set out in the initial portion of the Complaint reveals that, as of at least 2007, Mr. and Mrs. Sublett and Mr. LaRue had been separately engaged in closely related businesses, namely, the production and licensing of software for "customizable music files" for sale to purchasers located throughout the United States and around the world. Mr. LaRue allegedly initiated contact with the Subletts to propose their joining together to license and sell these music products utilizing and expanding on the Sublett's existing dealer network. Over the ensuing two and a half years, without ever nailing down the terms of their business relationship, they nonetheless conducted business jointly while their discussions and negotiations over the terms of an agreement between them were ongoing. At some point during the course of their discussions Mr.

---

[1] The specific form of Plaintiffs' business is not alleged in the Complaint, so we do not know whether it was a partnership, a limited liability corporation, a subchapter S corporation, a sole proprietorship, etc. However, exhibits attached to the Complaint refer to Mediak as an LLC as do they also Just Me Music as an LLC.

LaRue's submitted by an email to the Subletts a proposed Letter of Intent. (Comp. ¶ 18 – Exhibit E).

Exhibit E attached to the Complaint is described by Plaintiffs as the "final version" of the parties' Letter of Intent, which memorialized the parties' negotiations and agreement up to that point in time. (Comp. ¶ 18). Plaintiffs allege in the Complaint that the Letter of Intent contains no termination provision, which based on an examination of the Exhibit appears to be true.[2] They fail to address in their Complaint, however, certain other highly salient aspects of Exhibit E that appear on its face, to wit, the fact that it is undated and unsigned and that all the references to the alleged parties to the agreement use their business names–are in the names of their respective businesses–i,e., Mediak and Just Me Music–rather than the individual names of the principals of those businesses, i.e., the Subletts and/or Paul LaRue. (Interestingly, Plaintiffs have framed their Complaint as a case between the individuals rather than their business entitites.)

Also significant is the introductory paragraph in the Letter of Intent (Exh. E), which states as follows: "This Letter of Intent shall serve as a preliminary statement of the bullet points of an agreement …[which] …[t]he parties …may change, modify, add to or delete from [sic] these through mutual discussion and apply all defined content to an

---

[2] In an attempt to understand the reason for Plaintiffs' reference in the Complaint to the absence of a "termination provision" we assume that means that the Letter of Intent embodies no deadline by which its terms must either be accepted or rejected, since as is states there is simply a Letter of Intent, to wit, a "preliminary statement of the bullet points of an agreement" which the parties may "change, modify, add to or delete from …through mutual discussion and apply all defined content to an approved and final Agreement." Exh. E.

approved and final Agreement.  The points are not in any particular order, but are random statements based on the phone discussion 06/23/09."

For more than two years, the parties apparently worked together successfully, but, by at least March 7, 2012, their business relationship had soured (see Exhibit I), causing them eventually to part ways.

It is not clear whether Plaintiffs are asserting that the Letter of Intent formed a binding agreement between the parties.  What is clear is that, in crafting their Complaint, Plaintiffs have engaged in some "artful pleading" in an apparent attempt to hedge their bets as to their precise legal theory.  To get around the fact that it sees clear that no final contractual agreement was ever reached between them and Mr. LaRue, they have incorporated a variety of vague references to the existence of some kind of understanding other than an actual contract.

For example,  Paragraph 22 of the Complaint alleges that "the parties **agreed** on business matters," and that averment is followed by an excerpt from the attached Exhibit F, quoting an email from Mr. LaRue dated May 12, 2010, which states  that he was "working on a **more formal contract** between us."  (Comp ¶ 23).  Further, Paragraph 24 of the Complaint recites:  "Because of the **business relationship** …" and Paragraph 26 alleges that during the referenced time period "Plaintiff [sic] paid royalties to Defendant **per the agreement** …," which phrase is repeated in Paragraph 27:  "Plaintiffs performed to the **agreement** …."  In Paragraph 28, Plaintiffs allege that they made royalty payments

to Defendant "in excess of the **historic royalty** amount …." (Emphasis supplied in each of the above excerpts from the Complaint.)

Defendant's Motion to Dismiss attacks the Complaint in the following respects: First, Mr. LaRue argues that the Complaint fails to allege facts to establish that a contractual agreement was ever reached by and between himself and Plaintiffs, as evidenced by the unsigned, undated and preliminary nature of the Letter of Intent on which Plaintiffs attempt to pin their breach of contract claims. (Exh E). Second, Mr. LaRue notes that, in addition to the conspicuous facial deficiencies in Exhibit E, the Complaint itself fails to alleged facts sufficient to prove that any other enforceable contractual agreement was ever reached between the parties resulting from an offer, acceptance, the payment of adequate consideration and a final meeting of the minds. Further, given the lack of any definite and certain terms as to the nature and extent of the parties' respective obligations under the agreement, the Complaint fails to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), F.R.Civ.P. Third, Mr. LaRue contends that even if an agreement can be inferred based on the parties' course of conduct and/or the Letter of Intent, any such agreement that arose would have been between Mediak, LLC and Just Me Music, LLC, not the individual principals of those respective businesses, thus warranting the dismissal of the claims against him personally.

Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss Complaint states that, "(w)hen the parties engaged in a letter of intent, it was contemplated that the contractual arrangement would be between limited liability companies which are named

in the letter of intent."  However, the explanation continues, the limited liability companies were never established, "hence the parties (were) doing business personally." (Brief –Para. #2).  In Para. #5,  Plaintiffs' counsel concedes that there was no contractual agreement ever created between the parties, explaining that:  "While there is not a formal, signed agreement, the parties did business for over two years under terms that were negotiated by the parties …[and] [t]he specific terms of the contract can be determined by the evidence, by normal business practice and by the applicable law."

The remainder of Plaintiffs' Response–sparse as it is–recites that in their dealings with Mr. LaRue his business role was never entirely clear, which is why they chose to sue him personally rather than any in the name of any of his businesses.  Plaintiffs suggest that we need not trouble ourselves over the evidentiary and pleading deficiencies, however, because  "[t]here are causes of action in the complaint that do not require the existence of a contract, so in any event absence of a written agreement would not by [sic] grounds to dismiss the Complaint in its entirely."

It is not too much to ask of any counsel appearing in this Court that he/she take responsibility for defending the legal viability of a Complaint filed by that lawyer, particularly when the pleading has been challenged in a  motion to dismiss.  The kind of "never mind" or "don't you worry" responses proffered by Plaintiffs' counsel here as referenced above ("There are causes of action in the complaint that do not require the existence of a contract …")  frankly don't cut it.  The gaps in the facts as well as the legal claims simply can't be ignored or wished away.  Nowhere, for example, in either the

Complaint or Plaintiffs' responsive brief are we informed with any specificity of the nature of their contract or agreement with Mr. LaRue.  Plaintiffs concede that whatever form it took, it was not a written agreement.  But whether it was an oral contract or whether their claim is based on a *quasi* contract theory or on unjust enrichment or something else, the record before us is entirely silent.  The contract claims in the Complaint, therefore, including the contractual interference claims are simply too barebones to survive the motion to dismiss.

As to Plaintiffs' claims generally, it is not the Court's responsibility to try to read into them a legal basis which might give them life.  Plaintiffs' counsel's two page response to the motion to dismiss is entirely devoid of any references to controlling legal principles or case citations.  As noted above, Plaintiffs' counsel's concession ("While there is not a formal, signed agreement, the parties did business for over two years under terms that were negotiated by the parties.") supports dismissal of all his contract-based claims,  particularly in the absence of any reliance on quasi-contractual theories of relief or a claim of breach of an oral agreement or a claim for unjust enrichment.  Thus, because Counts 3 and 4 sound in contract, they must be dismissed.

Counts 1 and 2 seek injunctive relief.  (We note, however, that no separate motion has been filed by Plaintiffs in support of their request for preliminary relief, as required by Local Rules of Court 65-2.)     Count 1 avers that Defendant unlawfully cancelled certain copyright licenses.  To the extent that "unlawfully cancelled" connotes a violation of a contractual duty owed by Defendant to Plaintiffs, this claim fails based for lack of

any enforceable agreement or contract between the parties with regard to the copyright licenses or anything else.  Count 2 seeks an order restraining Mr. LaRue from communicating directly with Plaintiffs' dealers.  We understand this claim to be related to Count 6 which is based on Mr. LaRue's alleged "tortious interference of [sic] business relationships."   The tortious interference of which Mr. LaRue is accused is his speaking with and attempting to conduct business with Plaintiffs' network of dealers and customers.

Under Indiana law, the elements of an action for tortious interference with business relationships are:  (1) the existence of a valid relationship; (2)  defendant's knowledge of it; (3) defendant's intentional interference with that relationship;  (4) the absence of justification; and (5) damages resulting from defendant's wrongful interference with the relationship.  Levee v. Beeching, 729 N.E.2d 215, (Ind.App. 2000).

A liberal reading of Count 6 of the Complaint discloses allegations to establish at least some of these elements, to wit, that Defendant was aware that Plaintiffs had established business relationships with their dealers to sell Plaintiffs' products and that Defendant intentionally communicated with these dealers by making misrepresentations and incorrect statements for the purpose of disrupting Plaintiffs' relationships with their dealers.  However, nothing in the Complaint addresses the fourth element of an interference claim, namely, that the Defendant acted without justification in competing with Plaintiffs.  In Haegert v. McMullan, 953 N.E.2d 1223, 1234 (Ind. App. 2011), citing *Restatement (Second) of Torts* § 767 (1977), the Indiana Court of Appeals held:

> The absence of justification is established by showing "that the interferer acted intentionally, without a legitimate business purpose, and the breach is malicious and exclusively directed to the injury and damage of another. […] The existence of a legitimate reason for the defendant's actions provides the necessary justification to avoid liability. (Citations omitted).

The <u>Haegert</u> Court further held, at page 1234:

> In determining whether a defendant's conduct is justified, the Restatement recommends the consideration of the following factors: '(a) the nature of the defendant's conduct; (b) the defendant's motive; (c) the interests of the plaintiff with which the defendant's conduct interferes; (d) the interests sought to be advanced by the defendant; (e) the social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff; (f) the proximity or remoteness of the defendant's conduct to the interference; and (g) the relations between the parties.' <u>Winkler</u>, 638 N.E.2d at 1235 (citing Restatement (Second) of Torts § 767 (1977)).

We acknowledge that our analysis at this juncture is limited to determining the legal sufficiency of the Complaint, but that determination necessarily turns on the facts as alleged by Plaintiffs. The Complaint, which consists of "threadbare recitals," conclusory words and legal phrases, simply does not satisfy the pleading requirements imposed by Supreme Court precedent. These well-established principles should have guided counsel's pleading practices and they now inform our decision making.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' (<u>Ashcroft v. Iqbal</u>, –– U.S. ––, ––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868

>(2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of <u>Federal Rules of Civil Procedure 8</u> and <u>12(b)(6)</u>. <u>Id.</u> A party moving to dismiss nonetheless bears a weighty burden. '[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.' <u>Twombly</u>, 550 U.S. 544, 563, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing <u>Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.</u>, 40 F.3d 247, 251 (7th Cir.1994) ('[At the pleading stage] the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.')). <u>Sanders v. City of Indianapolis</u>, S.D. Ind. (2010 WL 2484772).

Thus, the claims in Plaintiffs' Complaint for tortious interference of business relationships (Count 6) and tortious interference of contract (Count 7) as well as the claim alleging a breach of fiduciary duty which closely resembles the interference causes of action (Count 5) and the request for injunctive relief which is based on these interference claims (Count 2) all must be dismissed.

Similar pleading deficiencies afflict Plaintiffs' remaining claims: Count 7 which is entitled "promissory estoppel" recites that Defendant made certain oral and written promises to Plaintiffs, that Plaintiffs relied on those promises, and that Defendant failed to keep those promises. Assuming those promises sufficed to create some form of agreement between the parties, that contract must satisfy the Statute of Frauds. Promissory estoppel may be available to take an agreement outside the Statute of Frauds but only where damages are substantial, independent and unconscionable injury and

losses have occurred. e.g., Coca-Cola Co. v. Babyback's Intern., Inc. 841 N.E. 2d 557, 568 (Ind. 2006).

The Indiana Supreme Court in Babyback's, supra, citing its prior decision in Brown v. Branch, 758 N.E.2d 557, 52 (Ind. 2006) held as follows:

> [I]n order to establish an estoppel to remove the case from the operation of the Statute of Frauds, the party must show [ ] that the other party's refusal to carry out the terms of the agreement has resulted not merely in a denial of the rights which the agreement was intended to confer, but the infliction of an unjust and unconscionable injury and loss.

And in Spring Hill Developers, Inc. v. Arthur, 879 N.E.2d 1095, 1103 (Ind.App.2008), the Court of Appeals explicated the Supreme Court's holding in Babyback's as follows: "the injury must be not only (1) independent from the benefit of the bargain and resulting incidental expenses and inconvenience, but also (2) so substantial as to constitute an unjust and unconscionable injury."

In other words, neither the benefit of the bargain itself nor mere inconvenience or incidental expenses will suffice in terms of a claim for promissory estoppel. Plaintiffs' reliance injury and loss must be so substantial and independent as to constitute an unjust and unconscionable injury sufficient to remove the claim from the operation of the Statute of Frauds.

Once again, the barebones allegations contained in Count 7's simply fail to come close to satisfying the pleading requirements under the holdings of Iqbal and Twombley,

supra, in light of the elements of promissory estoppel. Consequently, Count 7 must also be dismissed.

Finally, Count 9, the Claim captioned "Fraud in the Inducement," begins with the phrase, "When Defendant entered into the agreement with Plaintiffs,…" which, for the reasons explicated above, embraces the false premise that an agreement or contract existed between them and Mr. LaRue.  More critical to our assessment of this claim is the notable omission of any of the particularity allegations as to the "who, what, when, where and how" of a properly framed fraud claim under Rule 9(b), F.R.Civ.P.'s heightened pleading requirements.  This Count, accordingly, must also be dismissed.

**CONCLUSION**:  In candor, we must say that neither counsel in this litigation has so far distinguished himself in terms of the quality of his advocacy, including especially the written filings, having left virtually all the legal analysis and research to the Court to conduct.  Having performed that role in counsels' stead, we conclude that none of the claims in the Complaint can survive.  The dismissal of the Complaint, however, is without prejudice to Plaintiffs' right to attempt to recast their lawsuit in a fashion that fully and correctly reflects both the underlying facts giving rise to their claims as well as their legal underpinnings.  Plaintiffs are allotted **thirty (30) days** from the date of this order within which to file their motion seeking leave to amend their complaint.  Their failure to file such a motion within the thirty (30) days allotted for this purpose will result in the dismissal of their claims being with prejudice.

Date: 03/27/2013

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

COPIES TO:

Michael A. Noll
*mike@nolllawoffice.com*

Jonathan Jackson Pledger
*jjpledger@comcast.net*